Filed 1/7/14  P. v. Parrish CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANK SHANE PARRISH,<br><br>Defendant and Appellant. | F062378<br><br>(Super. Ct. No. F10902568)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosendo Peña, Jr., Judge.

Rita Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Frank Shane Parrish was charged and convicted after a jury trial of two counts of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a)), with the special allegations that someone other than an accomplice was present at the time of the offenses (Pen. Code, § 667.5, subd. (c)(21)). The court found he had two prior serious felony enhancements (Pen. Code, § 667, subd. (a)), two prior strike convictions (Pen. Code, § 667, subds. (b)-(i)), and two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)). He was sentenced to the third strike term of 25 years to life for count I, plus 10 years for the prior serious felony enhancements; the court stayed the two prior prison term enhancements. As to count II, the court dismissed one of the prior strike convictions and imposed a consecutive second strike term of eight years.

Appellant's convictions were based on his commission of residential burglaries in the same neighborhood and on the same day. On appeal he contends the court erroneously admitted evidence he committed uncharged burglaries; defense counsel was prejudicially ineffective for not objecting to a limiting instruction about the uncharged burglaries; and the court should have stricken instead of stayed the prior prison term enhancements. We will modify appellant's sentence and otherwise affirm.

## FACTS

### Bowen Burglary (Count I)

Around 2:30 p.m. on May 14, 2010, Rodney Bowen was in the upstairs bedroom of his house in Fresno when he heard noises from his backyard fence. He looked out the window and did not see anything. He later heard noise from the garage, doors opening and closing in the kitchen, and things being moved around. The stairs creaked as if someone was coming upstairs, and he thought his son was home.

Bowen opened his bedroom door, walked into the hallway, and was startled to see a man looking at him. The man appeared surprised to see Bowen, and they were face-to-face. Bowen did not know the man and asked what he was doing in his house. The man

2.

said he had been doing yard work in the area, someone with a gun chased him, and he ran into Bowen's house for safety. The man was wearing a long-sleeve shirt and black gloves, neither of which seemed appropriate for doing yard work. He had tattoos on and around his neck.

Bowen told the man they should call police. The man did not reply. Instead, the man went downstairs, left through the garage, and hopped over the backyard fence. Bowen heard dogs barking in his neighbor's yard after appellant jumped over the fence.

Bowen discovered his Blackberry cellular telephone was missing. The side garage door into the house had been forced open and damaged. A screen had been removed from a downstairs window, and the window was partially open. Bowen called the police and reported the suspect's description.

Around 2:36 p.m., Ann Marie Oliveira was in her house, located near Bowen's residence. She heard a loud noise in her backyard. She saw a man walk across the roof of her shed, which was directly adjacent to the backyard fence. She believed the man had jumped the neighbor's fence and landed on top of the shed. She then saw the man jump off the shed, walk through her backyard, and jump the fence to another neighbor's yard. The man had tattoos on his neck and he was wearing a long-sleeve shirt. She called 911 and reported the intruder.

**Kroeger Burglary (Count II)**

Sometime after 2:30 p.m. on May 14, 2010, Charles Kroeger left his house, which was near Bowen's residence. He left the backyard sliding glass door unlocked and the blinds open. He returned around 4:00 p.m. and noticed the blinds were closed. He entered and discovered his house had been ransacked. He heard a noise from another room and shouted to see if anyone was there. Kroeger was surprised to see a man appear in the hallway. The man also seemed surprised to see Kroeger. The man had tattoos around his neck, and he was wearing a short sleeve shirt and short pants. Kroeger

3.

confronted and chased the man. The man ran out of the house, went into the backyard, jumped the fence, and disappeared.

Kroeger determined that between $1,200 and $2,500 in cash was missing from his house. Kroeger found one of his travel bags in the hallway. It had been removed from the closet and filled with coins, jewelry, and a Blackberry telephone. It also contained a long sleeve shirt and other clothes which were damp with sweat and did not belong to Kroeger. The Blackberry was later identified as Bowen's cell phone.

**The Suspect Runs Through Debenedetto's Yard**

On the same afternoon, Kim Debenedetto, who lived in the same neighborhood as Kroeger and Bowen, saw police officers in the area and asked what was going on. They told her about the burglaries and gave a description of the suspect.

Around 4:10 p.m., Debenedetto's dogs started barking. She saw someone run through her yard and jump the fence. The man had tattoos on his neck and appeared to match the description of the burglary suspect.

**Appellant's Arrest**

Fresno County Sheriff's Deputy Tom Grilione lived in the same area as Kroeger and Bowen, but he did not know them. Later on the day of the burglaries, Grilione was advised about the crimes, and he participated in the investigation with the Fresno Police Department. Grilione knew that appellant was a parolee who had recently been released from prison and lived in the neighborhood. Appellant lived about a third of a mile from Bowen's house.

Officer Grilione showed appellant's photograph to Kroeger, who said he was 95 percent sure that appellant was the suspect.

On May 18, 2010, Bowen reviewed a photographic lineup and identified appellant as the suspect. Later that day, appellant was arrested at his family's residence.

At trial, Bowen and Kroeger positively identified appellant as the man who confronted them in their homes. Also at trial, appellant's parole officer testified he was

4.

paroled to his family's residence in March 2010. It was located in the same area as the Bowen and Kroeger homes.

**Appellant's Postarrest Admissions**

Alex Harwell, an inmate in state prison, testified as a prosecution witness about a series of conversations he had with appellant when they were confined in county jail. The conversations occurred from July to October 2010. Appellant asked Harwell questions about his upcoming preliminary hearing. Appellant told Harwell he broke into a house, went upstairs, and the homeowner saw him. The homeowner asked what he was doing there. Appellant said he felt like "Bambi, deer caught in the headlights, he was really surprised that the homeowner was home." The homeowner asked him what he was doing there. Appellant said he froze and then ran away.

Appellant told Harwell he went into a second house on the same day, and he had "scoped" it out. Appellant said he was going to put items from the first and second houses together in one bag. Appellant said he was completely surprised to find the homeowner was there. Appellant said he ran away and jumped the fence. Appellant said there were complications because he left items in the second house which he had stolen from the first house. Appellant said he had "scoped" out both houses, he thought no one was going to be home during the daytime, and he knew it would be easier to get in.

Appellant told Harwell he had a good friend who would provide an alibi for the day he committed the burglaries. The friend worked for a landscape firm and the employer kept very poor records. Appellant's friend was going to say they had worked together that day, and there would be no way anyone could confirm or refute it. Harwell testified appellant expressed a "sense of desperation" to do whatever he had to so he would not go back to prison. Harwell had the impression that appellant would "continue to do what he was doing and that he was going to, in fact, do whatever he needed to do to make sure that he didn't get caught."

Harwell testified he came forward with this information because appellant said he committed burglaries in a neighborhood where Harwell had lived with his children. Harwell was upset when he heard this and decided to tell the authorities about appellant's statements.

Harwell testified he had prior convictions for forgery and car theft. At the time he was in county jail with appellant, he had been convicted of voluntary manslaughter with the use of a gun, and he was waiting to be sentenced for that conviction. Harwell testified he did not receive any benefit from the district attorney's office for providing the information about appellant's statements. He did not contact the prosecutor until after he had been sentenced for the manslaughter conviction. Harwell testified he was not pleased about having to testify since he was currently serving a prison term.

Officer Alan Taliaferro testified there were unsolved burglaries committed in a neighborhood located within a half-mile radius of Harwell's former residence, and two miles from the Bowen/Kroeger neighborhood. The unsolved burglaries were committed between March and May 18, 2010. Taliaferro conceded other burglaries occurred in that area after May 18, 2010, some of which were solved, and there were unsolved burglaries all over Fresno.

**Defense Evidence**

Appellant did not testify.

Eric Young testified he worked with appellant for a landscaping business the entire afternoon of May 14, 2010. Young admitted he refused to cooperate with the prosecutor's investigator prior to trial. Young had a prior felony conviction for the sale of marijuana.

**DISCUSSION**

I.  **Admission of Harwell's Testimony About the Uncharged Burglaries.**

Appellant contends the court abused its discretion when it permitted Harwell to testify about appellant's statements regarding his alleged commission of uncharged

6.

burglaries. Appellant asserts the court should have completely excluded this testimony as inadmissible propensity evidence pursuant to Evidence Code[1] section 1101, subdivision (b), and highly prejudicial under section 352.

As we will explain, the court did not abuse its discretion because it limited Harwell's testimony about appellant's admissions regarding his commission of other burglaries.

### A.   Motion to admit evidence about specific unsolved burglaries.

Prior to trial, the prosecutor moved to introduce Harwell's testimony about appellant's admissions regarding the two charged burglaries. The prosecutor also wanted Harwell to testify that appellant admitted he committed two uncharged burglaries. The prosecutor explained appellant's admissions about the uncharged burglaries were connected to two specific homes. Harwell reported that he told appellant where he used to live, and appellant said he broke into the homes of two neighbors by Harwell's former house. An investigator confirmed unsolved burglaries had occurred at two specific residences near Harwell's former residence, and the crimes were committed on March 3 and 26, 2010, when appellant was on parole.

The prosecutor argued evidence regarding the two specific uncharged burglaries was relevant and probative pursuant to section 1101, subdivision (b) to establish appellant's identity, motive, intent, and common scheme and plan because both the charged and uncharged offenses occurred during the daytime, and the houses were within two miles of each other. The prosecutor also argued the evidence was relevant and probative to corroborate Harwell's credibility about appellant's admissions.

Defense counsel objected to Harwell's testimony about uncharged burglaries. Counsel conceded someone broke into the Bowen and Kroeger homes but appellant was

---

[1]    All further statutory references in this section are to the Evidence Code unless otherwise indicated.

not the culprit, and his intent was not at issue. Counsel noted appellant allegedly told Harwell that he broke into the house of Harwell's good friend and stole a particular item, but that information was never corroborated. As for intent, counsel argued the charged and uncharged burglaries were not similar because homeowners were both present and absent, the entries were accomplished in different ways, the crimes were committed at different times of the day, and the suspects for the unsolved burglaries were never described. Counsel argued Harwell's proposed testimony about the uncharged offenses would be prejudicial because Harwell could have obtained that information through means other than hearing about the crimes from appellant.

The court held Harwell could testify about appellant's admissions regarding the charged offenses. However, the court excluded the evidence that appellant said he committed uncharged burglaries at specific homes. The court held there was little similarity between the charged and uncharged offenses, the burglaries occurred at different times of the day, the entries were gained both with and without force, and the occupants were not home for three of the burglaries. The court further held that evidence about uncharged burglaries at specific residences had very little probative value and could not be used to bolster Harwell's credibility.

### B. Motion to admit evidence relevant to Harwell's motive.

After the court excluded the specific evidence about uncharged burglaries, the prosecutor asked the court whether she could introduce evidence that Harwell contacted her office with the information about appellant's admissions because he was upset that appellant said he committed burglaries in an area where Harwell used to live. The prosecutor argued the jury would be suspicious about why an inmate would testify against appellant without receiving any prosecutorial benefit, and she should be able to explain Harwell's reasons for testifying. The prosecutor argued she should be able to show that Harwell did not make up the information about the uncharged burglaries in the area.

8.

The court replied:

"… I think that that can be accomplished probably *without mention of any specific other burglaries,* other than they were these burglaries that he had admitted to also involved his neighborhood, he was concerned about burglaries in his old neighborhood including others that may have been involved friends, but without going into him also saying that [appellant] pointed to different streets and houses where he committed offenses." (Italics added.)

Defense counsel objected to any evidence of the uncharged offenses as prejudicial, and argued appellant's rights were more important than Harwell's credibility.

The court held the prosecution could not introduce evidence about specific uncharged burglaries, or have the homeowners testify about the unsolved crimes. However, the court decided to permit "some mention with regard to Mr. Harwell's motive for coming forward with the evidence or the information that he has provided, but we'll need to keep it unspecific subject to his neighborhood and neighbors, concern about either friends or neighbors in the area."

The court further held an officer could testify there were several uncharged burglaries "within a two-mile radius, something along those lines," which would support the reason Harwell disclosed appellant's admissions. The court found the limited evidence would eliminate "much of the prejudice that the Court is concerned with regard to uncharged offenses."

The court also intended to give a limiting instruction that the evidence about the uncharged offenses was only relevant on Harwell's credibility. Defense counsel said he would propose some language.

### C.     Appellant's motion to reconsider.

Just before Harwell testified, defense counsel noted that Harwell claimed appellant burglarized a home which belonged to Harwell's friend. Defense counsel intended to introduce evidence that the home which belonged to Harwell's friend was never burglarized. The prosecutor replied that if the defense introduced evidence that a specific

9.

home was not burglarized, then she could call the other two homeowners to testify they were victims of unsolved burglaries in the same area. Defense counsel argued it would be prejudicial for Officer Taliaferro to testify there were unsolved burglaries in that neighborhood because "there's been burglaries in every neighborhood."

The court clarified that it excluded Harwell's testimony about specific uncharged burglaries and victims, but it would reconsider that ruling if defense counsel wanted to introduce evidence about Harwell's friend. The court again held that specific testimony would be more prejudicial than probative, and "we're not going to be having any trial with regard to whether certain burglaries occurred or did not occur other than the general area of where Mr. Harwell was at . . .." The court clarified that defense counsel could attack Harwell's testimony by asking the officer whether there were burglaries "pretty much everywhere in Fresno during that time."

### D.    Analysis.

Appellant contends the court's initial ruling to exclude Harwell's testimony about the uncharged burglaries was correct because the evidence was inadmissible propensity evidence under section 1101, subdivision (b), and not relevant or probative of his intent, motive, or common scheme and plan. However, appellant asserts the court violated his due process rights and abused its discretion when it reconsidered that ruling and permitted Harwell to generally testify about appellant's statements regarding his alleged commission of uncharged burglaries in the neighborhood where Harwell used to live.

"As a general rule, evidence the defendant has committed crimes other than those for which he is on trial is inadmissible to prove bad character, predisposition to criminality, or the defendant's conduct on a specific occasion. [Citation.] However, . . . section 1101, subdivision (b), permits evidence of a defendant's past criminal acts when relevant to prove a material fact at issue, such as identity, motive, or knowledge. [Citations.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

10.

"'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.) The evidence is also subject to a section 352 prejudicial analysis. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)

In this case, however, the superior court held Harwell could not testify about specific unsolved burglaries as indicative of appellant's intent, motive or any other purposes under section 1101, subdivision (b) because the charged and uncharged offenses were insufficiently similar. Instead, the court admitted limited evidence on the uncharged offenses as relevant and probative on Harwell's credibility for disclosing appellant's admissions.

As the California Supreme Court has explained, the restrictions in section 1101, subdivisions (a) and (b) "on the use of character evidence ha[ve] no application when the evidence is offered on the issue of a witness's credibility. [Citation.] Indeed, subdivision (c) of . . . section 1101 expressly allows the admission of evidence for that purpose." (*People v. Abel* (2012) 53 Cal.4th 891, 928; *People v. Stern* (2003) 111 Cal.App.4th 283, 297 (*Stern*).) Section 1101, subdivision (c) states: "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

An issue similar to the one in this case was addressed in *Stern, supra*, 111 Cal.App.4th 283, where the defendant was charged with multiple offenses which included making threats to a victim during a telephone call, where the defendant said he would "slit [his] mother's throat and force [him] to watch it." (*Id*. at pp. 295, 286.) While making the threat, the defendant bragged he had stabbed somebody else in the throat just a couple of nights earlier and he had no regard for anybody. The trial court admitted evidence the defendant stabbed someone else shortly before he threatened the

11.

victim of the charged offenses, and held the evidence was relevant to support the victim's credibility about the telephone threat. (*Id.* at pp. 294-295.)

*Stern* held the evidence of the prior uncharged stabbing was properly admitted pursuant to the "Truth-in-Evidence" provisions of article I, section 28 of the California Constitution, and the trial court had discretion to permit brief testimony by two witnesses about the prior stabbing, subject to the limitations of section 352. Stern held the evidence was relevant and probative to corroborate the victim's credibility and recollection of the defendant's statements during the telephone threat. (*Stern, supra*, 111 Cal.App.4th at pp. 298-299.)

*Stern* further held: "[T]there is no merit to the suggestion that . . . section 1101, subdivisions (a) and (b) have anything to do with the proper resolution of this case. The evidence of the uncharged offense was received solely on the issue of [the victim's] believability—an obviously important issue. Accordingly, the restrictions on character evidence in . . . section 1101 were inapplicable." (*Stern, supra*, 111 Cal.App.4th at p. 296, fn. omitted.) *Stern* clarified that section 1101, subdivision (c) did not create grounds for the admissibility of character evidence, but held "there is nothing in article I, section 28, subdivision (d) to prevent the use of relevant testimony to prove a crime victim, or any other witness for that matter, is telling the truth," subject to the limitations of section 352. (*Stern, supra*, 111 Cal.App.4th at p. 300.)

The court in this case did not abuse its discretion when it determined that Harwell's limited testimony about appellant's statements was relevant and probative of Harwell's credibility for coming forward with the information. Harwell admitted his criminal history, and that his conversations with appellant occurred while he was waiting to be sentenced for manslaughter. However, Harwell insisted he did not request or obtain any benefit for providing the information to the district attorney's office. The court excluded the prosecution's offer of proof that appellant admitted to specific burglaries at specific locations in his former neighborhood, and testimony from the victims of those

12.

unsolved burglaries about the crimes. Instead, Harwell was only permitted to offer vague testimony that appellant said he committed burglaries in Harwell's former neighborhood, and that was the reason Harwell disclosed appellant's statements to the prosecution. Moreover, Officer Taliaferro's testimony was also limited to the point that burglaries had been committed in that area, but he conceded there were both solved and unsolved offenses which had occurred in the entire city.

As we will discuss in issue II, *post*, the jury received appropriate instructions on the consideration of Harwell's testimony. More importantly, the prosecutor advised the jury during closing argument that it could only rely on Harwell's testimony about the uncharged burglaries to determine his credibility and motive for coming forward with the information, and it could not rely on that evidence to convict appellant of the charged crimes.

Even if the court abused its discretion when it admitted Harwell's limited testimony on this point, any error was harmless. The erroneous admission of evidence requires reversal only if it is reasonably probable that the defendant would have obtained a more favorable result had the evidence been excluded. (§ 353, subd. (b); *People v. Earp* (1999) 20 Cal.4th 826, 878; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Appellant asserts Harwell's testimony was prejudicial because the victims offered inconsistent descriptions of the burglary suspect and Young, appellant's alleged coworker, testified "convincingly" about appellant's alibi. The record suggests otherwise. Both Bowen and Kroeger came face-to-face with the culprit and had sufficient time to observe his facial characteristics. Bowen immediately identified appellant upon viewing the photographic lineup, and Kroeger said he was 95 percent certain that appellant was the suspect when he looked at his single photograph. Both victims positively identified appellant at trial, and appellant did not challenge the admissibility of their pretrial or trial identifications.

13.

Moreover, Bowen's stolen cellular telephone was found in Kroeger's house, inside Kroeger's stolen bag which contained his stolen property and clothes which did not belong to him. As for the alibi evidence, Harwell testified appellant said his friend would provide an alibi that could not be challenged; appellant has not challenged the admissibility of Harwell's testimony on that point. It is not reasonably probable that a more favorable result would have occurred if Harwell's testimony about the other burglaries had been excluded.

Finally, appellant's due process claim is also meritless.[2] The admission of evidence may violate due process if there is no permissible inference a jury may draw from the evidence. (*People v. Steele, supra,* 27 Cal.4th at p. 1246.) As we have explained, there were clearly permissible inferences to draw from the evidence. Moreover, "the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair.*" (*People v. Partida* (2005) 37 Cal.4th 428, 439, italics in original.) The evidence introduced here was limited and was not so prejudicial as to render appellant's trial unfair.

## II.     Ineffective Assistance; Failing to Object to the Limiting Instruction.

Appellant next contends his defense attorney was prejudicially ineffective for failing to object to the court's limiting instruction about Harwell's testimony. Appellant asserts the instruction allowed the jury to consider his statements about the uncharged burglaries as evidence of his guilt of the charged offenses.

---

[2]     Respondent asserts appellant has forfeited review of this issue because he never raised a due process objection to Harwell's testimony. We will briefly address this issue, however, to the extent that defense counsel complained the court's ultimate ruling on Harwell's testimony violated appellant's "rights."

## A.    Background.

As noted above, the court advised the parties it would give a limiting instruction about Harwell's testimony, and defense counsel said he would propose some language.

During the course of trial, defense counsel offered a modified version of CALCRIM No. 303 on the limited use of Harwell's testimony about the uncharged burglaries. The court tailored the instruction to the particular facts of this case. Both the prosecutor and defense counsel agreed to the court's modified instruction.

After Harwell testified, the court read the following version of CALCRIM No. 303 to the jury:

> "… During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. The People presented evidence that the [appellant] told Alex Harwell that he committed other offenses that are not charged in this case. If you find that the [appellant] did not make this statement, you must disregard this evidence entirely. *If you find the [appellant] made this statement to Alex Harwell, you may consider this evidence only for the limited purpose of determining the credibility and motives of the witness Alex Harwell. Do not conclude from this evidence that the [appellant] has a bad character or is disposed to commit crime.* If you conclude that the [appellant] made the statement that he committed other uncharged offenses, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove that the [appellant] is guilty of the charged offenses. The People must still prove each charge and allegation beyond a reasonable doubt." (Italics and underscoring added.)

During the instructional phase, the court again read this instruction to the jury.

## B.    Analysis.

Appellant contends defense counsel was prejudicially ineffective for failing to object to the limiting instruction because the language was internally inconsistent. He concedes the italicized language, as noted above, properly advised the jury about the limited purpose of Harwell's testimony. However, he asserts the underscored language undermined the impact of the limiting instruction because it allowed the jury to consider his statements to Harwell on the issue of his guilt.

15.

"… To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms.  Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him.  [Citations.]"  (*People v. Hawkins* (1995) 10 Cal.4th 920, 940, overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110 and *People v. Blakeley* (2000) 23 Cal.4th 82, 89.)

"[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context:  Rather, ""'""the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.…"'"""  [Citations.]"  (*People v. Stone* (2008) 160 Cal.App.4th 323, 331.)  "[I]f a jury instruction appears ambiguous, '"we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction."  [Citations.]  ... The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury.  [Citations.]'"  (*Ibid.*)

Defense counsel was not prejudicially ineffective because the limiting instruction was a correct statement of the law.  The jury was correctly instructed about the limited admissibility of Harwell's testimony about appellant's statements regarding the uncharged burglaries.  The concluding portion of the instruction reminded the jury that appellant's statements were insufficient to prove his guilt, and the People still had the burden to prove guilt beyond a reasonable doubt.  The balance of the instruction was consistent with other, properly given instructions relevant to Harwell's testimony about appellant's admissions, including CALCRIM No. 316, the impact of a felony conviction on a witness's credibility; CALCRIM No. 336, that Harwell was an in-custody informant, and to view the testimony of an in-custody informant with caution; CALCRIM No. 358, to consider with caution evidence of statements made by appellant tending to show his guilt unless the statements were written or otherwise recorded; CALCRIM No. 359,

16.

appellant could not be convicted based on his out-of-court statements unless other evidence showed the crimes were committed; and CALCRIM No. 220, reasonable doubt. As we have already noted, the prosecutor specifically advised the jury during closing argument that Harwell's testimony about the uncharged burglaries was only relevant to his motive and credibility, and it could not consider the evidence to determine appellant's guilt.

Finally, to the extent defense counsel should have requested alternate language, his failure to object was not prejudicial. "Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 215.) As we also explained above, appellant had the misfortune of running into both homeowners during his daytime burglaries. Appellant complains they gave inconsistent descriptions of some aspects of his facial characteristics, but both witnesses were positive appellant was the burglar they confronted in their homes.

## III.   The Prior Prison Term Enhancements.

Appellant contends the court should have stricken instead of stayed the terms for the prior prison term enhancements because they were based on the same prior convictions used to impose the prior serious felony enhancements. Respondent asserts that one of the prior prison term enhancements was properly imposed based on the unique circumstances of one of appellant's prior convictions. We will reject respondent's argument and order the amendment of the abstract of judgment.

### A.   Background.

The amended information alleged appellant had two prior convictions for first degree burglary in Fresno County based on (1) case No. 663085-9 in 2002; and (2) case No. F03904076-7 in 2003. These two prior convictions were the basis for the special allegations that he had two prior serious felony enhancements (Pen. Code, § 667, subd.

17.

(a)), two prior strike convictions (Pen. Code, § 667, subds. (b)-(i)); and two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

At the bifurcated proceeding, the court found all special allegations were true based on the following evidence. In case No. 663085-9, appellant was convicted of residential burglary and sentenced to prison on August 15, 2002; he was released on parole on February 25, 2003. In case No. F03904076-7, appellant was convicted and sentenced to prison for residential burglary with a prior serious felony enhancement, on September 25, 2003; he was released on parole on February 25, 2010.

At the sentencing hearing, the court imposed the third strike term of 25 years to life for count I, the Bowen burglary, plus two five-year terms for the prior serious felony enhancements. The court imposed two one-year terms for the prior prison term enhancements, and then stayed those terms pursuant to Penal Code section 654. Appellant did not object to the sentence.

## B. Analysis.

Appellant contends the court should have stricken, instead of imposed and stayed, the two one-year terms imposed for the prior prison term enhancements because the two enhancements were based on the same prior burglaries convictions used to impose the two prior serious felony enhancements in this case.

A trial court may not rely on the same prior conviction to impose both a five-year prior serious felony enhancement under Penal Code section 667, subdivision (a), and a one-year prior prison term enhancement under Penal Code section 667.5, subdivision (b). (*People v. Jones* (1993) 5 Cal.4th 1142, 1150.) In such a situation, only the greatest

18.

felony enhancement may be imposed, and the prior prison term enhancement must be stricken. (*Id.* at pp. 1150-1153.)[3]

"Prior prison term enhancements may be imposed or stricken but not stayed. [Citations.]" (*People v. Jordan* (2003) 108 Cal.App.4th 349, 368; *People v. Langston* (2004) 33 Cal.4th 1237, 1241.) The failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal, and in the absence of an objection. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Bradley* (1998) 64 Cal.App.4th 386, 391.)

In this case, the same two prior residential burglary convictions were the basis for the two prior serious felony enhancements and the two prior prison term enhancements. The court should have stricken instead of stayed the prior prison term enhancements, and the failure to do so resulted in an unauthorized sentence. (*People v. Jones, supra*, 5 Cal.4th at pp. 1152-1153.)

Respondent concedes that in case No. 663085-9, the same prior residential burglary conviction in 2002 was the basis for the court's imposition of both a five-year prior serious felony enhancement and a one-year prior prison term enhancement in this case, and the latter should have been stricken instead of stayed.

As for the enhancements based on case No. F03904076-7, however, respondent raises a novel argument against striking the second prior prison term enhancement which was imposed in this case. Respondent's argument is based on the fact that in case No. F03904076-7, he was convicted and sentenced in 2003 for residential burglary and also received a prison term for a prior serious felony enhancement.

---

[3]      *Jones* does not prohibit the court's use of the same prior conviction to impose both a strike term and a prior serious felony enhancement. (*People v. Anderson* (1995) 35 Cal.App.4th 587, 594-595.)

19.

Respondent asserts that since appellant was convicted and sentenced to prison in case No. F03904076-7 for both residential burglary and a prior serious felony enhancement, the court *in this case* could have separately relied on (1) appellant's 2003 residential burglary conviction to impose a five-year prior serious felony enhancement, and (2) the separate prison term imposed in 2003 for the prior serious felony enhancement attached to the burglary conviction, to impose the prior prison term enhancement in this case. Respondent thus concludes the prior prison term enhancement should not be stricken under *Jones*.

Respondent's arguments are based on a series of cases which held that *Jones* does not prohibit a court from imposing enhancements under both Penal Code section 667, subdivision (a) and Penal Code section 667.5, subdivision (b), if each enhancement is separately based on different convictions, even if the defendant served only one prison sentence for both convictions. (See, e.g., *People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1664-1671.)

For example, in *People v. Wiley* (1994) 25 Cal.App.4th 159, the court approved the imposition of both enhancements based on two separate and distinct prior convictions, even though the prior offenses were tried in a joint trial. (*Id*. at p. 164.) In *People v. Medina* (1988) 206 Cal.App.3d 986, the trial court imposed both a prior enhancement based on two separate robbery convictions, even though the two convictions resulted in concurrent prison terms. (*Id*. at pp. 988-989.) *Medina* held the imposition of both enhancements was appropriate because "a single previous prison commitment for two or more serious felony offenses may serve as the basis for sentence enhancements" under both section 667, subdivision (a) and section 667.5, subdivision (b), if the court does not use the same underlying facts "to twice enhance the defendant's sentence." (*Id*. at pp. 989, 990.)

Respondent's reliance on *Wiley* and *Medina* is misplaced since those cases permit imposition of terms for both enhancements when they are based on *separate prior*

*convictions*.  In case No. F03904076-7, however, appellant was convicted and sentenced to prison for the single offense of residential burglary in 2003.  The fact that he also received a prison term for a prior serious felony enhancement in 2003 does not distinguish this case from *Jones*, or separately trigger a prior prison term enhancement herein.  Section 667.5, subdivision (b) requires imposition of a one-year enhancement "for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended *for any felony* …."  (Italics added.) "[O]ne cannot be punished for the enhancement separately from the underlying offense." (*People v. Smith* (1985) 163 Cal.App.3d 908, 914; *People v. McFarland* (1989) 47 Cal.3d 798, 802, fn. 6.)

The enhancements in this case were based on the same prior felony convictions, and both prior prison term enhancements should have been stricken instead of imposed and stayed.

## DISPOSITION

The judgment is modified to strike the two one-year prior prison term enhancements imposed and stayed as to count I.  The trial court shall prepare an amended abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
FRANSON, J.

21.